# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Case No. 20-cv-00801-JRT-LIB

Halverson Wood Products, Inc.,

                              Plaintiff,

     vs.

Classified Systems LLC,
  *d/b/a* Hammerhead Attachments,

                              Defendant.

**RESPONSE TO MOTION FOR
SUMMARY JUDGMENT**

## I.   INTRODUCTION

Plaintiff Halverson Wood Products, Inc., ("Plaintiff" or "Halverson") hereby responds to defendant Classified Systems, LLC's ("Defendant") Motion for Summary Judgment (ECF No. 34) ("Motion") and the supporting Memorandum of Law (ECF No. 35) ("Memorandum").  As discussed below, Defendant's motion is contrary to the clear and unambiguous admonition of the Court in its recent Order denying Defendant's similar motion to dismiss. ECF No. 8.  Defendant's Motion is also contrary to the recently issued scheduling order (ECF No. 32), is premature as it was filed before any meaningful claim construction or discovery had been taken, and once again improperly asserts that the Court adopt Defendant's unilateral claim construction.  Similarly to its previous futile motion to dismiss, Defendant's present motion is not ripe because its entirety hinges upon claim construction.  In that regard, Defendant's present motion is in reality an attempted end-run around the Court's scheduling order that set a timeline for claim construction and a *Markman* hearing; a schedule that Defendant clearly does not want to have to go through.  While it is understood that claim construction is a matter of law, which the Court can address whenever it wants, there is presently an order in place setting forth a schedule for claim construction to occur, a schedule with which Defendant is simply dissatisfied.  Aside from Defendant's preposterous self-serving attitude that anything other than its claim construction position is outrageous, the present Motion, including a Rule 11 motion Defendant served upon the undersigned counsel one day after filing the present Motion, is merely gamesmanship on behalf of Defendant to pursue a

different claim construction schedule—or alternatively, Defendant's failure to properly request a modification of the scheduling order.

As each of these is improper under a Motion for Summary Judgment, Defendant's Motion must be <u>denied</u> in its entirety.

## II.    BACKGROUND[1]

On March 25, 2020, Halverson initiated the present proceeding by filing a Complaint alleging, *inter alia,* that Defendant's Hammerhead SSP-180 Pro Firewood Processor product (hereinafter "the Accused Product) infringes at least one claim of U.S. Pat. No. 7,669,618 (hereinafter "the '618 patent"). ECF Nos. 1; 1-1, Ex. A.

Attempting to resolve the matter amicably prior to serving the Complaint, the undersigned counsel reached out to Defendant's counsel via letter, requesting that Defendant comply with Halverson's prior demands or face litigation. On April 14, 2020, Defendant responded by accusing both Halverson and the undersigned counsel of having violated Rule 11 of the Federal Rules of Civil Procedure, based entirely upon its own narrow interpretation of the claim language, namely, that the "loading apparatus" of claims 1 and 13 being "rigidly mounted" to the support structure could only be construed as the loading apparatus being entirely rigid unto itself. (DuFault Decl. ¶ 2, Ex. 1). Hammerhead asserted that comments made by Halverson during the prosecution of the '618 patent disclaimed <u>any</u> pivoting of the "loading apparatus."  Defendant's counsel therefore gave Halverson until April 24, 2020, to either voluntarily withdraw the

---

[1] In its Memorandum (ECF No. 35), Defendant included a section entitled "Statement of Material Facts."  Such a statement is not required by this District's Local Rules, nor is Halverson required to specifically respond thereto.

Complaint or face a Rule 11 motion for sanctions. Upon review, Halverson determined Defendant's accusations to be baseless, and on April 25, 2020, Defendant was served with the Complaint via Summons, with Defendant's deadline to answer or otherwise respond being May 18, 2020.

On April 27, 2020, the undersigned counsel for Halverson responded to Defendant's April 14, 2020, letter, explaining how Defendant's reliance upon the prosecution history of the '618 patent was taken entirely out of context, and that Defendant's narrow claim interpretation of "loading apparatus" was erroneous. *Id.,* ¶ 3, Ex. 2. Halverson explained that there was nothing in the '618 prosecution history that "…narrows the otherwise plain meaning of loading apparatus to require it to mean that the entirety of the loading apparatus itself must be rigid or fixed, especially in relation to itself." *Id.* Nothing was heard from Defendant until the morning of May 18, 2020, the deadline for Defendant to answer or otherwise respond to the Complaint. Defendant then for the first time indicated that it intended to file that day a motion to dismiss under Fed. R. Civ. P. 12(b)(6), and that it was contacting Halverson simply to comply with L.R. 7.1(a) prior to doing so. Upon reviewing Defendant's proposed motion, it was clear that Defendant's motion was not proper under Rule 12(b)(6) as Defendant was not alleging that the Complaint itself was improperly plead, but was instead attempting to conduct claim construction. Prior to Defendant filing its motion, Halverson responded that day, indicating that any such motion would be futile because (1) the Complaint clearly had "…alleged all the necessary legal requirements showing that it is entitled to relief… under Fed. Civ. P 12(b)(6)[,]" and (2) that the motion to dismiss called for

impermissible claim construction at the initial pleading stage. *Id.*, ¶ 4, Ex. 3.  Moreover, Halverson again reiterated that "…nothing in [the '618 patent] claims… narrows the otherwise plain meaning of ["loading apparatus"] to require it to mean that the entirety of the loading apparatus itself must be rigid or fixed, especially in relation to itself." *Id.*

Defendant nonetheless proceeded with filing its futile motion (ECF Nos. 8, 9), which was unsurprisingly denied as not being ripe. ECF No. 24.  In so doing, the Court clearly stated:

> [Defendant's] arguments ask the Court to venture into claim construction at the motion to dismiss stage, but Classified's disputed interpretation of the limitations in Claim 1 of the '618 Patent **cannot be considered until a *Markman* hearing on claim construction**." (emphasis added) *Id.,* at 7.

On December 8, 2020, the parties filed a joint Rule 26(f) Report setting out, *inter alia,* a proposed schedule on claim construction. ECF No. 28. In preparing this report, at no time did Defendant raise any objections with the proposed schedule, and in fact counsel for Defendant provided his assent thereto as the report was jointly signed prior to being filed with the Court. On December 14, 2020, the Court issued a scheduling order essentially adopting the parties' proposed discovery dates relating to claim construction. ECF No. 32, ¶ (e).  Further, prior to Defendant filing the present Motion, the only item on the scheduling order that had been completed was service of Plaintiff's infringement contentions upon Defendant.  In fact, at the time of this writing, the parties have not yet even exchanged a listing of claim terms either party contends needs be construed. DuFault Decl., ¶ 9.  The exchange of claim terms is not scheduled to occur until March 8,

2021. *See,* ECF No. 32, Sched. Order*,* ¶ (e)(3)(A). In that regard, no meaningful claim construction has yet been conducted in this matter, especially no *Markman* hearing.

Moreover, on February 10, 2021, one day after filing the present Motion, Defendant served upon the undersigned counsel a Memorandum of Law in Support of Rule 11 Motion[2] ("Rule 11 Memorandum"), which begins "[n]o reasonable and competent attorney would believe Halverson's Infringement Contentions." *Id*., ¶ 5, Ex. 4. While at times incoherent, the Rule 11 Memorandum essentially repeats the same mischaracterization of Halverson's infringement contentions as contained in the present Memorandum, concluding that not only is Defendant's interpretation of "loading apparatus" the only interpretation allowed, but any other interpretation is sanctionable conduct under Fed. R. Civ. P. 11.

From the onset of this matter, Defendant has engaged in intimidation tactics in the apparent hope that Halverson will simply walk away, all so Defendant can continue with its infringing behavior unabated.  Add to that its prior futile motion to dismiss, and its present Motion right on the heels thereof raising the very same issues, it is clear that Defendant is simply engaging in gamesmanship.

## III.   DEFENDAN'T MOTION IS PREMATURE

The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact and that it is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A party opposing a summary judgment motion may request that a district court defer considering the motion

---

[2] No actual motion was served, as is required by Fed. R. Civ. P. 11(c)(2).

or deny it, allow time to obtain affidavits or declarations or to take discovery, or issue any

other appropriate order when it "…cannot present facts essential to justify its opposition."

Fed. R. Civ. P. 56(d). "[S]ummary judgment [should] be refused where the nonmoving

party has not had the opportunity to discover information that is essential to his

opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5, 106 S. Ct. 2505, 91

L. Ed. 2d 202 (1986).

### A.   Defendant's Motion Is A Veiled Motion to Reconsider

Defendant's present premature Rule 56 Motion comes on the heels of its prior, and

futile, Rule 12(b)(6) motion to dismiss, a motion that raised the <u>exact same</u> issues as the

present Motion.  That motion was denied, in part, because Defendant was attempting to

perform claim construction prior to the *Markman* hearing. ("[D]isputed interpretation of

the limitations in Claim 1 of the '618 Patent cannot be considered until a *Markman*

hearing on claim construction." ECF No. 24, at 7.)  Defendant now asserts that its present

Motion is ripe because it has since been served with Halverson's infringement

contentions. Specifically, Defendant relies upon what Halverson has asserted as the

"loading apparatus" in the Accused Product as grounds for the ripeness of its present

Motion.  However, none of this is new information to Defendant.  Defendant was

reasonably put on notice of these infringement contentions even prior to Defendant filing

its futile motion to dismiss.  For example, from Halverson's April 27, 2020, letter, to

Defendant:

> [T]he loading apparatus of the [Accused Product] is required to be at least rigidly
> mounted to the support structure so as to pivot with the support structure, as that is
> required to position the grapple over timber.  Further, the grapple itself is not

> directly attached to the support structure; instead, it attaches to the portion of the loading apparatus <u>rigidly</u> <u>mounted</u> to the support structure.  (DuFault Decl., Ex 2.)

In other words, the information which Defendant now asserts as the reason *sine qua non* supporting the filing of its present Motion was in Defendant's possession even before it filed its previous motion to dismiss; a motion which raised the <u>very</u> <u>same</u> issues as the present Motion.  In that regard, Defendant's present Motion is nothing more than a veiled Motion to Reconsider filed in contravention of the Local Rules which requires the Court's permission to file, wherein Defendant would have had to have shown compelling circumstances in order to obtain such permission. *See*, LR 7.1(j).  Defendant complied with none of these requirements before filing its present Motion.   Instead, Defendant wastes both Halverson's and the Court's time in simply re-arguing its previous arguments, which the Court has already clearly indicated would not be ripe until a *Markman* hearing had been conducted.

### B.   Defendant Has Not Yet Responded To Discovery Requests Served Prior To Its Motion

The Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment… because persons of ordinary skill in the art ("POSITA") rarely would confine their definitions of terms to the exact representations depicted in the embodiments." *Phillips*, 415 F.3d at 1323. The level of ordinary skill is a function of many factors, including: "(1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of

active workers in the field." *Daiichi Sankyo Co. Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (citation omitted); *see also Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962-63 (Fed. Cir. 1986).

Discovery has only recently opened, and prior to Defendant filing its present Motion, Halverson served Defendant with its first discovery requests. DuFault Decl., ¶¶ 6, 7; Exs. 5 and 6.  Defendant has not yet responded to those requests, and the responses are not due until *after* Halversons's present Response is due.  Information sought through Plaintiff's first set of discovery requests include, *inter alia*, identifying Defendant's current position regarding what constitutes a POSITA pertaining to the claimed subject matter of the patent in suit. *Id.*, Ex. 5, Interrog. No. 11. The requested information is necessary to properly perform claim construction analysis.  Further, no depositions have been taken, let alone even scheduled.  Without having received responses to its discovery requests, nor given the opportunity to conduct any depositions, Plaintiff is unable to present facts essential to justify its opposition to Defendant's Motion, including facts related to how a POSITA would understand the claims. Defendant's Motion should be denied, or alternatively deferred until discovery can be taken.[3] *See,* Fed. R. Civ. P. 56(d).

### C.      No Court-Ordered Claim Construction Has Taken Place

In its premature Motion, Defendant's non-infringement arguments rely entirely upon its own unilateral, self-serving claim construction.  However, the Court has not yet ruled on the construction of any claim terms.  As mentioned, the parties have not yet even exchanged a listing of claim terms to construe.  Nonetheless, Defendant has identified

---

[3] DuFault Decl., ¶¶ 8 – 13.

certain claim terms and now attempts to unilaterally construe them in a manner of its own choosing.   At this early stage in the litigation process, not only is such an attempt improper, but contrary to the scheduling order.   *See, e.g.*, ECF No. 32, ¶ (e).   Defendant's premature Motion, wherein it is requesting the Court perform claim construction on a basis other than that as delineated by the current scheduling order, is essentially a request to modify that scheduling order.   However, Defendant has not at all followed procedure as laid out in Local Rule 16.3, Modification of a Scheduling Order.   For example, LR 16.3(a) requires that any modification of the scheduling order must be done on motion, in accordance with LR 7.1(b)—which itself requires, before the filing of any non-dispositive motion, that the parties conduct a meet-and-confer per LR 7.1(a), something which Defendant did not do.   Further, LR 16.3(b) requires that the party moving for a modification of the scheduling order "…must: (1) establish good cause for the proposed modification: and (2) explain the proposed modification's effect on any deadlines." Again, Defendant has done none of this.   In filing its premature Motion, before any meaningful claim construction or discovery has been conducted in accordance with the present scheduling order, Defendant is simply doing an end-run around the same. Clearly, Defendant does not want to conduct claim construction, nor a *Markman* hearing, in accordance with the Court's scheduling order.

Proper construction of the claims is essential to Halverson in order to fully respond to Defendant's Motion. Defendant's early, premature Motion should be outright denied as being contrary to not only the Court's clear instructions that the issues raised therein could not be considered until a *Markman* hearing had been conducted, but as an

inappropriate request to modify the present scheduling order in contravention to LR 16.3. Alternatively, Defendant's Motion should at least be continued under Fed. R. Civ. P. 56(d) until proper claim construction and a *Markman* hearing has been completed in accordance with the Court's scheduling order.

## IV.   CLAIM CONSTRUCTION

Even if the Court proceeds on the merits of Defendant's premature Motion, it should not adopt Defendant's erroneous constructions. "[A] bedrock principle of patent law [is] that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water v. Safari Water Filtration*, 381 F.3d 1111, 1115 (Fed. Cir. 2004) (citations omitted). An infringement analysis therefore includes a two-step process in which first the correct claim scope is determined, followed by comparing the properly construed claim to the accused device to determine whether all of the claim limitations are present. *Techsearch, L.L.C. v. Intel Corp.* 286 F.3d 1360, 1371 (Fed. Cir. 2002). Patent claims "describe and point out the invention by a series of limiting words or phrases (limitations)." *Corning Glass Works v. Sumitomo Elec. USA Inc.*, 868 F.2d 1251, 1258 (Fed. Cir. 1989). Claim construction is an issue of law for the court. *Markman v. Westview Instr.*, 517 U.S. 370, 391 (1996). Claim construction is driven by the intrinsic evidence, *i.e.*, the claims, the specification, and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed.Cir. 2005) (*en banc*). Claim terms are given their ordinary meaning as understood by a POSITA in light of the intrinsic evidence. *Id.* at 1312-13.

However, a "patentee is entitled to the full scope of his claims, and [courts] will not limit him to his preferred embodiment or import a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed.Cir. 2009); see also, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed.Cir. 2005) (Courts must not "import[] limitations from the specification into the claim."). "[C]laims, not specification embodiments, define the scope of patent protection." *Kara Tech.*, 582 F.3d at 1348.   Limiting claims to a preferred embodiment, *i.e.*, disavowing broad scope, "requires that the specification or prosecution history make clear that the invention does not include a particular feature, or is clearly limited to a particular form of the invention." *Hill-Rom Servs., Inv. v. Stryker Corp.*, 755 F.3d 1367, 1371-72 (Fed.Cir. 2014) (citations omitted).   "The standards for finding … disavowal are exacting" and require clear indication the invention "requires" a feature. *Id*. at 1371; Cf. *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1367 (Fed.Cir. 2007).   In short, any narrowing or disclaimer must be "clear and unambiguous." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-25 (Fed.Cir. 2003).

Generally, "the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).   To avoid improperly importing limitations into the claims, "it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Phillips,* 415 F.3d at 1323.   Thus, when reviewing the intrinsic evidence to

construe the claims, courts must "strive to capture the scope of the actual invention, rather than strictly limit the scope of claims to disclosed embodiments or allow the claim language to become divorced from what the specification conveys is the invention." *Retractable Techs.*, 653 F.3d at 1305 (citing *Phillips,* 415 F.3d at 1323-24). Thus, the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips*, 415 F.3d at 1323; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002))); *accord Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797-800 (Fed Cir. 2019) (declining to read limitation into claim terms that were given the "plain and ordinary meaning").

Finally, as previously discussed herein, claims are to be construed from the viewpoint of a POSITA at the time of the invention. *Phillips*, 415 F.3d at 1313. The level of ordinary skill is a function of many factors, including: "(1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field." *Daiichi Sankyo Co. Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (citation omitted); *see also*

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962-63 (Fed. Cir. 1986).

### A.    Defendant Improperly Construes the Term "Loading Apparatus"

Throughout the entirety of its Memorandum, Defendant continuously—and erroneously—asserts that the "rigidly mounted" aspect of claims 1 and 13, with respect to the "loading apparatus," means that the <u>entirety</u> of the loading apparatus is rigid.  This is incorrect.  In effect, Defendant is guilty of the very thing it has (wrongfully) accused Halverson of doing, namely, rewriting the claims to include limitations that simply are not there.  In this instance, Defendant rewrites claims 1 and 13 to include the limitation "entire" with respect to the "loading apparatus." ("[T]he claim limitation that 'said loading apparatus is rigidly mounted… to pivot with [the] support structure…," must properly be construed to mean 'said [entire] loading apparatus….'" Memorandum, ECF No. 35 at 3).  However, not only is there no support for reading this limitation into the claim, but by doing so Defendant frustrates the claim as it makes the "loading apparatus" essentially unworkable.

Moreover, throughout the entirety of its analysis, Defendant makes no attempt to consider or analyze the claim language from the viewpoint of a POSITA at the time of the invention. *See, e.g., Phillips*, 415 F.3d at 1313.    In fact, Defendant made no attempt to even define a POSITA.[4]  Defendant instead relies upon conclusory assertions of its own, which is wholly improper at this stage as not only has there been essentially no claim construction conducted in accordance with Court's scheduling order, but no

---

[4] Defendant has not yet responded to Halverson's interrogatory requesting this information.

opportunity has been given to consider the claims from the position of a POSITA, including the opportunity to consult with and/or provide the report of an expert, despite the scheduling order clearly allowing the parties to do so.  *See,* ECF No. 32, ¶ (e)(3)(D).

### 1.   Infringement Contentions Are Not Proposed Claim Construction

Defendant begins its flawed analysis by asserting that Halverson, through its *infringement contentions*, proposed "…to construe 'said loading apparatus' as '[a portion of] said loading apparatus….'"  However, and has been discussed several times herein, the parties have not yet even exchanged claim terms, let alone put forth proposed claim construction.   In that regard, Defendant's reliance upon Halverson's infringement contentions, exclusively, is improper.  Infringement contentions are not meant to present the exact wording of proposed constructions. The purpose of infringement contentions is so that the plaintiff can put forward its theory of the case early on so as to avoid gamesmanship throughout discovery; infringement contentions do not set forth proposed construction of claims terms, which is a distinctly separate matter.   For example, paragraph (e)(1) of the scheduling order sets forth the parameters of plaintiff's claim chart (*i.e.*, infringement contentions), and nothing stated therein requires the proposed construction of any claim terms. ECF No. 32, at 4. The procedures related to proposed construction of claim terms is dictated at paragraph (e)(3) of the scheduling order, and the parties have not exchanged, nor are even scheduled to exchange, claim terms until March 8, 2021, wherein proposed constructions are not due until March 22. *Id.*  While Halverson reserves its right to adopt proposed construction in accordance with the scheduling order,

Defendant's entire reliance upon Halverson's infringement contentions at this stage is simply misplaced.

2.      The Term "Apparatus" Need Not Be Construed.

One of Defendant's obvious errors in its Memorandum is that it spends no time discussing construction of the term "apparatus," and for obvious reasons.  In order to support its non-infringement theory, that the loading apparatus is entirely rigid unto itself, or alternatively, that its "grapple" is the only item that can considered a "loading apparatus," Defendant looks past the plain and ordinary meaning of the term "apparatus" which includes: "a set of materials or equipment designed for a particular use…;"[5] "a group or combination of instruments, machinery, tools, materials, etc., having a particular function or intended for a specific use…;" or "any complex instrument or mechanism for a particular purpose."[6] The commonality shared between each of these dictionary definitions is that an apparatus comprises more than one part, and is not limited to a single part *per se*. There is nothing in the claims themselves that would detract from the common and ordinary meaning of that term.  Nor does the specification teach away from the common and ordinary meaning.  In that regard, the term "apparatus" need not be construed, and it should be given its plain and ordinary meaning.

3.      Defendant Improperly Construes "Said Loading Apparatus" To Mean the "Entire Loading Apparatus."

Regarding the term "Said Loading Apparatus," the entirety of Defendant's non-infringement analysis pivots (no pun intended) upon its unilateral construction that the

---

[5] *See*: https://www.merriam-webster.com/dictionary/apparatus  last accessed March 1, 2021.
[6] *See*: https://www.dictionary.com/browse/apparatus  last accessed March 1, 2021.

"loading apparatus" is rigid unto itself.  But such a construction is erroneous.  There are two instances of the term "rigidly" found in either of independent claim 1 or 13; each instance is in connection with how one element <u>mounts</u> to another element.  In the first instance, the support structure is "rigidly mounted" to the skid steer loader.  In the second instance, the loading apparatus is in turn "rigidly mounted" to the support structure.  In other words, the "rigidity" element modifies the <u>mounting aspect</u> of the support structure and the loading apparatus, not characteristics of the structures themselves.

As defined by each of claims 1 and 13, the purpose of the loading apparatus being "rigidly mounted" to the support structure is so that the loading apparatus pivots "…with said support structure about said skid steer loader vehicle…."  In other words, if the support structure is tilted or pivoted by action of the skid steer loader, the loading apparatus also moves in like manner.  There is no language in any of the claims indicating that the loading apparatus itself is rigid, or that the "entire" loading apparatus must be rigid unto itself.

In its Memorandum, Defendant heavily relies upon the prosecution history of the '618 patent to improperly assert claim prosecution disclaimer.  Defendant asserts that, based upon arguments Halverson made responsive to a prior-art rejection, "loading apparatus" must be construed to be entirely rigid unto itself. However, a closer reading of the pertinent prosecution history does not support this.  First, responsive to an Office Action in which U.S. Pat. No. 3,862,651 ("Heikkinen") was cited in a novelty rejection, Halverson amended claims 1 and 16 (the latter which issued as claim 13) to define the invention as having, *inter alia*, a loading apparatus "rigidly mounted to said support

structure to pivot with said support structure about said skid steer loader vehicle…." ECF

No. 34-2 at 28 – 29.  In support of the amendment, Halverson stated:

> …Heikkinen utilizes a trailer type vehicle which <u>is not</u> capable of pivoting the support frame, the arms (reference numerals 20 and 21) are required to pivot about the support frame when loading timber onto the conveyor.  In addition to the referenced figure, the functioning of the arms is clearly stated in Hiekkinen, column 2 paragraph starting on line 9, "*More specifically, loading rack 12 comprises a pair of arms 20 and 21 that are adjustable and extendible to rest on the ground when the machine 10 is to be loaded with timbers. ... Loading rack 12 is* **pivotally mounted** *to frame 11 by a pair of pin joints 22 so that by application of pressure to hydraulic ram 24 the loading raises loading rack 12 so the timbers or rack 12 can be slid onto bed 13.* (bolded emphasis added) *Id.,* at 29.

It was in this context that Halverson amended claims 1 and 13 to define how the loading

apparatus *mounted* to the support structure.  Whereas Hiekkinen taught a <u>pivotally</u>

<u>mounted</u> loading apparatus, Halverson's invention taught a <u>rigidly</u> mounted one (i.e., one

that did not pivot ***at the mounting point to the support structure***).  Again, the focus here

is on the mounting of the loading apparatus to the support structure, not whether the

loading apparatus is rigid unto itself.  Moreover, as can been seen in the below Figure 1

of Heikkinen, arms 20 and 21 (which form a part of loading rack 12) do not pivot with

respect to themselves; in other words, Heikkinen's "loading apparatus" is entirely rigid.



-18-

Clearly, Halverson's amending of the claims to define the invention as having a rigidly mounted loading apparatus was to distinguish itself from the <u>pivotal</u> <u>mounting</u> nature of Heikkinen's loading rack, and <u>not</u> to distinguish from Heikkinen's already rigid arms.  It would make no sense to amend the claims to define the invention as having the loading apparatus be entirely rigid unto itself to overcome a novelty rejection when the referenced prior art had a rigid loading apparatus.  It is in this proper context that the following passage from the Amendment should be read:

> The loading apparatus … rigidly extends from the support structure in a non-pivotal manner with respect to the support structure.  The loading apparatus is pivoted by the skid steer loader vehicle when pivoting the support frame to load the conveying unit… with lumber…. Heikkinen would have no reason or motivation to pivot the support frame since the arms shown in Hiekkinen *already are pivotally mounted*. (emphasis added) *Id.*

Contrary to Defendant's erroneous assertion, the aforementioned does not at all require that the loading apparatus be entirely rigid unto itself.  The distinguishing characteristic between Halverson's invention and that of Heikinnen was how the <u>loading</u> <u>apparatus</u> mounted to the support structure, wherein the overall structure of the loading apparatus itself was irrelevant.  Moreover, "rigidly extends" clearly refers to the mounting aspect, and does not at all require that all other parts of the loading apparatus past that extension must be rigid.

Defendant argues for a narrowing claim construction that would say that "rigidly mounting" means that not only is the mounting rigid but also every subcomponent of the "apparatus" even though the claims do not explicitly recite that.  By way of analogy to a hypothetical flagpole apparatus, one could have a flagpole "rigidly mounted" to the

ground, but the remainder of the flagpole apparatus can still have ropes and pulleys that move/operate relative to the pole to raise a flag up the pole. Defendant is simply trying to improperly read-in a negative limitation to the plain and ordinary meaning of "loading apparatus" by requiring that the entirety of the apparatus must be rigid.

> 4. Defendant Bizarrely Asserts That Any Construction Of "Loading Apparatus" Other Than Their Own Is Sanctionable

Defendant asserts that Halverson's infringement contentions "stretch the bounds of reasonableness," citing *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1366 (Fed. Cir. 2012). ECF No. 29, Memo. at 29. However, the facts of that case are clearly distinguished from the present. In *Raylon*, the plaintiff contended that the term "pivotally mounted," in relation to a display on a handheld device, covered a non-pivotal fixed-display because the user could "pivot" the display relative to the user by manipulating the entire handheld device with the user's hand or arm. That is in no way even analogous to the present matter. Here, the issue is whether the "loading apparatus" is rigidly mounted to the support structure—it is—and not whether such mounting is pivotal to the ground and/or the user, which in this instance would have to include the driver of the skid steer loader. Halverson's infringement contentions assert nothing of the such. Instead, Halverson's contentions not only identify what it asserts to be the "loading apparatus" of the Accused Product, but also identify the portion of the "loading apparatus" that rigidly mounts to the support structure.

Defendant nonetheless complains that Halverson's infringement contentions are flawed because they identified "the portion" of the loading apparatus that rigidly mounts

to the support structure, and not the entire apparatus. However, Defendant's reasoning on this is nonsensical. Returning to the flagpole apparatus analogy, it is beyond dispute that one end of the flagpole itself is in contact with the ground in order for the flagpole to be rigidly mounted thereto, especially if the flagpole is to retain its vertical orientation as the purpose of a flagpole is to raise flags above the ground and into the air. Obviously, if the entirety of the flagpole were "rigidly mounted" to the ground, it would cease to exist as a flagpole as it would have to be situated horizontally, its entire length being in contact with the ground in order for its entirety to be "rigidly mounted." Clearly, Defendant's assertion on this point is erroneous.

Halverson's infringement contentions clearly identified the structure of the Accused Product it contends meets the "loading apparatus" element, as shown below in connection with claim 1[7]. ECF No. 34-4 at 6.



| wherein said support structure includes a receiving end, a working end and a loading apparatus, wherein said receiving end is opposite said working end and wherein said loading apparatus extends from said receiving end; | Literally present in Accused Product.<br><br>The images to the right exhibit the support structure having a receiving end (light green), a working end (blue) and a loading apparatus (orange), wherein the loading apparatus extends from the receiving end. | |

[7] Halverson's infringement contentions for claim 13 are essentially the same.

Halverson's infringement contentions further identified where the "loading apparatus" is "rigidly mounted" to the support structure, as shown below (*Id.* at 7) :

| wherein said loading apparatus is rigidly mounted to said support structure to pivot with said support structure about said skid steer loader vehicle via said skid steer loader vehicle; | Literally present in Accused Product.<br><br>The first image to the right shows a portion of the loading apparatus (orange) rigidly mounted to the support structure (green), whereas the second and third images show the portion of the loading apparatus of the first image pivoting with said support structure about said skid steer loader vehicle via said skid steer loader vehicle. |  |

As shown in the second and third images above, what Halverson contends is the "loading apparatus" pivots with the support structure about the skid steer loader vehicle via the skid steer loader vehicle.   Only by the "loading apparatus" being "rigidly mounted" to the support structure is the loading apparatus allowed to pivot with the support structure via the skid steer loader to position the loading apparatus, which includes the grapple, to retrieve lumber. As such, these contentions are <u>entirely reasonable</u> and Defendant's assertion to the contrary simply has no support.

Finally, there is clearly a dispute of material fact regarding Defendant's assertion that its "loading apparatus" consists only of the grapple, and no other structure—an assertion Halverson denies. *See, e.g.,* ECF No. 35, Memo. at 27 – 28. Such factual inquiry, at least at this stage, cannot be settled through summary judgment, and Defendant's Motion must be denied.

## B.    Defendant Improperly Construes the Term "Attached"

Defendant asserts that the "plain and ordinary meaning" of the term "attached" in connection with the "conveyor unit" of claims 1 and 13 of the '618 patent can only be construed as "connected directly." ECF No. 35 at 32.  In so doing, though, Defendant once again is guilty of what it accuses Halverson of doing in connection with its infringement contentions, namely that Defendant is attempting to insert a limitation into a claim that is simply not there.

In its analysis, Defendant makes no attempt to consider or analyze the claim language from the viewpoint of a POSITA at the time of the invention. *See, e.g., Phillips*, 415 F.3d at 1312-13 (Claim terms are given their ordinary meaning as understood by a POSITA in light of the intrinsic evidence.).  For example, an ordinary and customary definition of "attach" includes: to fasten or affix; join; connect.[8]  Such a meaning does not, in and of itself, require that such attachment be "direct."

In fact, as was discussed in connection with Defendant's construction of "loading apparatus," Defendant made no attempt whatsoever to even define a POSITA.  Instead, Defendant performs a slight-of-hand, first by asserting that the claims themselves

---

[8] *See,* https://www.dictionary.com/browse/attach last accessed March 2, 2021.

"confirm" that "attached" means "connected directly," even though there is not a single

instance in the claims where the term "directly" modifies the term "attached."[9]   Then,

Defendant jumps to the specification in an attempt to import the "direct" limitation into

the claims, indicating that the drawings show the conveyor unit "directly attached" to the

support structure.  However, this is entirely improper.  A "patentee is entitled to the full

scope of his claims, and [courts] will not limit him to his preferred embodiment or import

a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*,

582 F.3d 1341, 1348 (Fed.Cir. 2009).  "[C]laims, not specification embodiments, define

the scope of patent protection." *Kara Tech.*, 582 F.3d at 1348.  Defendant finally throws

its hands up, insisting that because the prosecution history provided no insight to the

meaning "attached," then its construction of "connected directly" must be adopted.  This

makes no sense.  For example, by way of analogy, employing Defendant's logic, a leaf

cannot be considered attached to a tree because the leaf first attaches to a branch.

Alternatively, and again by way of analogy, employing Defendant's logic, a hand is not

attached to the body of a person because the hand is first attached to an arm.  Clearly,

such reasoning is erroneous.

Defendant also cites two cases out of California, one from the Northern District

and the other from the Southern District, to support its construction of "connected

directly."  However, neither case is controlling authority in this District.  More important,

---

[9] The term "directly" is found in claims 12 and 16 of the '618 patent to describe the relative position of the ram, so clearly the patentee was aware of and used that term when it intended to do so.

the claim construction determinations were arrived at *after* claim construction and a *Markman* hearing had taken place.  That is simply not the case here.

In short, the claim term "attached" cannot be construed at this stage of litigation as no discovery related to claim construction has been allowed to proceed.  This includes discovery related to what Defendant considers to be a POSITA, which is needed to consider the claim language from the viewpoint of a POSITA at the time of the invention.

Alternatively, if the Court adopts Defendant's narrow construction of the term "attached," Halverson respectfully requests leave to amend its infringement contentions to include, with respect to the conveyor unit, infringement under the doctrine of equivalents.  Contrary to Defendant's assertion in its Memorandum, the doctrine of equivalents is available to Halverson on this point as none of the amendments to the claims 1 or 13 touched on the conveyor unit, and prosecution history estoppel does not apply.  *See, Aquatex Industries, Inc. v. Techniche Solutions*, 479 F.3d 1320, 1325-27 (Fed. Cir. 2007).

## IV.   CONCLUSION

Based upon the foregoing, summary judgment is not proper at this time. Defendant's unilateral claim constructions, made outside the Court's scheduling order, and prior to conducting a *Markman* hearing, are premature and do not stand up to scrutiny.  As the entire basis for Defendant's non-infringement analysis depends upon the adoption of its unilateral claim construction, constructions the Court should not adopt, Defendant's motion for summary judgment of non-infringement fails.  As such, the Court should deny Defendant's Motion in its entirety or, alternatively, defer considering

Defendant's Motion under Fed. R. Civ. P. 56(d) at least until 21 days after the Court issues a Claim Construction ruling.


Dated:  March 2, 2021                          Respectfully submitted,

                                    By: *s/Dustin R. DuFault*
                                          Dustin R. DuFault (302,776)
                                          **DuFault Law Firm, P.C.**
                                          PO Box 1219
                                          Minnetonka, MN 55345
                                          Tel: (952) 935-4392
                                          Fax: (866) 936-4542
                                          Dustin@DuFault-Law.com

                                          **ATTORNEY FOR PLAINTIFF**
                                          **Halverson Wood Products, Inc.**