# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Case No. 20-cv-00801-JRT-LIB

Halverson Wood Products, Inc.,

                    Plaintiff,

    vs.

Classified Systems LLC,
  *d/b/a* Hammerhead Attachments,

                 Defendant.

**RESPONSE TO DEFENDANT'S (SECOND) MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

Plaintiff Halverson Wood Products, Inc., ("Plaintiff" or "Halverson") hereby responds to defendant Classified Systems, LLC's ("Classified") second Motion for Summary Judgment (ECF No. 53) ("Motion") and its supporting Memorandum of Law (ECF No. 54) ("Memorandum").  As discussed below, Classified's motion is contrary to the clear and unambiguous admonition of the Court in two of its recent Orders (ECF Nos. 24 & 52) denying Classified's Motion to Dismiss (ECF No. 8), as well as Classified's prior untimely filed Motion for Summary Judgment (ECF No. 34), wherein the issues raised in each of them could not be determined until after the Court conducted claim construction and a *Markman* hearing.  Each of two previously filed motions essentially raise the same issues as raised in the present Motion.  In that regard, the present Motion is again premature as it was filed before the Court has set up any briefing schedule in connection with claim construction, or conducted any *Markman* hearing for that matter.  Instead, Classified predicates its present Motion on several demonstrably false assertions.  Moreover, Classified once again attempts to convince the Court that it must adopt Classified's unilateral, self-serving claim construction in an attempt to find non-infringement.  Similarly to its previous futile motions, Classified's present motion is not ripe because it hinges entirely upon claim construction, which the Court has not yet conducted.

In denying Classified's prior premature motion for summary judgment, the Court stated that "[a] patent infringement analysis comprises a two-step process." ECF No. 52 at 6, c*iting Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).  This

Court continued:

> First, the court determines the meaning and scope of the patent claims asserted to be infringed, commonly known as "claim construction,"[]which is a question of law for the Court[]. Second, the court compares the construed claims to the device accused of infringing. (internal citations omitted).

*Id.*

Classified's present Motion again, in part, asks the Court to address both steps of the infringement analysis in one step, rather than through separate claim construction briefing followed by dispositive motions as set forth in the Pretrial Scheduling Order.   The Court has already stated that this "…impermissibly bypass[es] claim construction…." *Id.* at 1.  In other part, Classified is again asking the Court to rule as a matter of law on non-infringement, which, prior to the Court having ruled on claim construction, is merely a feigned request to reconsider its previously denied Motion to Dismiss—the Court has already ruled that it cannot rule as a matter of law until at least claim construction has been completed. ("Classified's arguments ask the Court to venture into claim construction at the motion to dismiss stage, but Classified's disputed interpretation of the limitations in Claim 1 of the '618 Patent cannot be considered until a *Markman* hearing on claim construction.")(citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (refusing to consider *Markman*-style arguments at the motion to dismiss stage). ECF 24 at 8–9.

In view of the foregoing, Classified's present motion is yet another attempted end-run around the Court's Pretrial Scheduling Order that set a timeline for claim construction and a *Markman* hearing—neither of which have yet to occur.   Further, being that the

Court has not yet made any ruling on the construction of disputed terms, Halverson is prejudiced by having to respond to Classified's arguments based upon yet-to-be-construed claim terms.[1]

Classified's present Motion must be <u>denied</u> in its entirety.  Further, this is Classified's third "bite at the apple" on the same issues, which the Court has twice now admonished Classified cannot be considered until claim construction and a *Markman* hearing have been completed.  Not only should the Court deny Classified's present Motion, the Court should do so <u>with</u> <u>prejudice</u>, as well as award Halverson's its costs and attorney's fees for having to respond to same.


## II.    BACKGROUND[2]

Plaintiff Halverson is the owner of U.S. Pat. No. 7,669,618, entitled "Wood Processor Attachment for Skid Steer Loader," which issued on March 2, 2010 ("the '618 Patent"). ECF No. 1-1.  The '618 Patent is directed at an attachment for a skid steer[3] which permits the picking up and processing of felled logs into firewood without the operator having to leave the cab of the skid steer.  The '618 Patent contains 20 claims, of which claims 1, 5, 7 – 11 and 13 – 15 are asserted as being infringed by Defendant Classified's

---

[1] The Court is not obligated to adopt the proposed construction of either party, and to the extent Classified now relies upon *proposed* constructions, the Court's construction may ultimately differ.

[2] In its Memorandum (ECF No. 53), Defendant included a section entitled "Statement of Material Facts."  Such a statement is not required by this District's Local Rules, nor is Halverson required to specifically respond thereto.

[3] A "skid steer" is commonly known as a small engine-powered machine with lift arms that can attach to a wide variety of labor-saving tools or attachments.

skid steer firewood processing attachment offered and sold under the name 'Hammerhead SSP-180 Pro Firewood Processor' ("Accused Product").  ECF No. 34-4.

On March 25, 2020, Halverson initiated the present proceeding by filing a Complaint alleging, *inter alia,* that Classified's Accused Product infringes the '618 patent. ECF No. 1.  On May 18, 2020, Classified filed a futile Motion to Dismiss, wherein Classified attempted to persuade the Court that Halverson's allegations of infringement must be dismissed based solely upon Classified's unilateral, self-serving claim construction. ECF No. 8.  Unsurprisingly, the Court denied the motion as an improper attempt at claim construction before any *Markman* hearing had been conducted. ECF No. 24.  In so doing, the Court stated:

> Classified's arguments ask the Court to venture into claim construction at the motion to dismiss stage, but Classified's disputed interpretation of the limitations in Claim 1 of the '618 Patent **cannot be considered until a *Markman* hearing on claim construction**." (emphasis added) *Id.,* at 7.

On December 8, 2020, the parties filed a joint Rule 26(f) Report setting out, *inter alia,* a proposed schedule on claim construction. ECF No. 28.  On December 14, 2020, the Court issued a Pretrial Scheduling Order essentially adopting the parties' proposed discovery dates relating to claim construction.  ECF No. 32, ¶ (e).  In accordance with paragraph (e)(4) of the Pretrial Scheduling Order, the parties filed with the Court on April 12, 2020, a Joint Patent Case Status Report and Joint Claim Construction Statement ("Status Report") (ECF Nos. 46 and 46-1), wherein Halverson requested a claim construction hearing.  Classified admitted that there were claim construction issues for the Court to resolve.  ECF No. 46.

Prior to filing the Status Report, on February 9, 2021, Classified filed a Motion for Summary Judgment of Non-Infringement (ECF No. 34), raising nearly the identical issues of claim construction that were raised in its previously denied Motion to Dismiss.  On July 15, 2021, fact discovery closed without Classified taking any discovery whatsoever; Classified served no interrogatory, no document request, no request for admission, nor took any deposition.  On July 19, 2021, the Court issued an Order denying Classified's Motion for Summary Judgment. ECF No. 52.  In so doing, the Court once again stated, *inter alia*, "[b]ecause Classified moved for judgment of noninfringement before… the Court construed the relevant patent claims, thus asking the Court to impermissibly bypass claim construction, the Court will deny the Motion…." *Id.* at 1.  Since then, the parties have been waiting upon the Court to set forth a briefing schedule on claim construction, as delineated in paragraph (e)(6)(d) of the Pretrial Scheduling Order.  ECF No. 32.  At no time has the Court made any indication that it would be electing not to conduct claim construction, including briefing and/or a *Markman* hearing. In that regard, no meaningful briefing on claim construction has yet been conducted in this matter, especially no *Markman* hearing.

## III.    CLASSIFIED'S MOTION IS PREMATURE

Classified's Motion must be denied as being premature as it was filed prior to any claim construction briefing and/or *Markman* hearing.  Classified predicates the timing of filing its present Motion on several assertions, each of which are demonstrably false.  First, Classified asserts that the "…Court elected not to schedule a claim construction hearing." ECF No. 54 at 2.  Nowhere in the record is there any support for such a statement, which

directly contradicts what the Court has specifically stated in its two prior orders denying each of Classified's dispositive motions. In denying Classified's Motion to Dismiss (ECF No. 8), the Court unequivocally stated that "...Classified's disputed interpretation of the [claim] limitations cannot be considered until a *Markman* hearing on claim construction." ECF No. 24 at 7. In denying Classified's first Motion for Summary Judgment (ECF No. 34), the Court stated that "...Classified moved for judgment of noninfringement before... the Court construed the relevant patent claims, thus asking the Court to impermissibly bypass claim construction." ECF No. 52 at 1. Thus, on at least two separate occasions, in clear and unambiguous terms, this Court has stated that claim construction is necessary before any dispositive motion can be decided. Halverson is unaware of any statement made by the Court wherein the Court "elected" not to conduct claim construction and/or a *Markman* hearing. DuFault Decl., ¶ 2.

Second, Classified implies that the Pretrial Scheduling Order mandated that all dispositive motions must be filed by January 1, 2022. ECF No. 54 at 2. This is <u>false</u> as the Pretrial Scheduling Order clearly indicates that that date was conditional upon the timing of the issuance of the Claim Construction Order. *See,* ECF No. 32, ¶ (j)(4). In other words, the Pretrial Scheduling Order clearly contemplated that the January 1, 2022, deadline would only apply if the Court had issued its Claim Construction Order well prior to that deadline; to date, the Court has not issued any such Claim Construction Order, and thus the January 1, 2022, deadline is now moot.

Third, Classified asserts that Expert Discovery has closed and that no experts have been identified. ECF No. 54 at 2. However, the Pretrial Scheduling Order clearly indicates

that the deadline of identifying experts does not occur until 15 days *after* the Court issues its Claim Construction Order. ECF No. 32 (g)(2)(A)(i).  Again, the Court has not yet issued any Claim Construction Order, and expert discovery has arguably not even opened, let alone closed, and Classified's assertion to the contrary is <u>false</u>.

Finally, in its last Order, the Court reminded the parties that the Pretrial Scheduling Order contained a footnote suggesting that "[i]f the parties believe early or piecemeal dispositive motion practice is necessary, they should seek permission of the District Judge." ECF No. 52 at 4, citing ECF No. 32 at 9, n.1.  Classified again ignores this suggestion by the Court, instead filing yet another early dispositive motion.  Classified wastes both Halverson's and the Court's time in simply re-arguing its previous arguments, which the Court has already clearly indicated would not be ripe until at least a *Markman* hearing has been conducted.

### A.    The Court Has Made No Election Disregarding Claim Construction

Classified's present premature Motion comes after its two prior premature—and futile—motions, the first was a Motion to Dismiss under Rule 12(b)(6) and the second was a Motion for Summary Judgment of Non-Infringement under Rule 56, wherein each raised essentially the <u>exact</u> <u>same</u> issues as the present Motion.  Both of those motions were denied, in part, because Classified was attempting to perform claim construction prior to the *Markman* hearing. ("[D]isputed interpretation of the limitations in Claim 1 of the '618 Patent cannot be considered until a *Markman* hearing on claim construction." ECF No. 24, at 7.) ("Because Classified moved for judgment of noninfringement before… the Court construed the relevant patent claims, thus asking the Court to impermissibly bypass claim

construction, the Court will deny the Motion….” ECF 52 at 2.)  There can be no other interpretation of the aforementioned admonitions other than the Court intends to conduct claim construction in this matter, and any attempt to resolve this short of first having performed claim construction would be “impermissibly bypass[ing]” the same.

Nonetheless, Classified now <u>falsely</u> asserts that its present Motion is ripe because the “…Court elected not to schedule a claim construction hearing.” ECF No. 54 at 2. However, there is absolutely nothing in the record indicating that the Court did in fact make any such election.  Instead, to support this false assertion, Classified merely cites paragraphs (e)(6) and (j)(4) of the Pretrial Scheduling Order.  Paragraph (e)(6) of the Pretrial Scheduling Order dictates what is to occur when the Court schedules a claim construction hearing. ECF No. 32.  Paragraph (j)(4) sets the deadlines for filing dispositive motions. *Id.* Neither of those cited paragraphs requires the Court to positively make any election regarding the claim construction hearing. Nor does anything in the Pretrial Scheduling Order require the Court to make an election of claim construction within a given timeframe.

Instead, it appears that Classified has imposed upon the Court an arbitrary deadline by which the Court had to have scheduled a claim construction hearing, and by not scheduling any hearing by that arbitrary—and unknown—deadline, the Court apparently “elected” not to conduct the same. By not scheduling the claim construction hearing by Classified’s arbitrary deadline, it would appear that it is Classified’s (erroneous) position that the Court must have elected not to schedule a hearing altogether.  When this arbitrary deadline occurred, of course, Classified does not state.  Classified merely refers to

paragraph (j)(4) of the Pretrial Scheduling Order, which imposes a January 1, 2022, deadline for the filing of dispositive motions. What Classified ignores, though, is that that date is in the disjunctive, and the deadline for filing dispositive motions can also be "…**four (4) months** after the Court issues the Claim Construction Order." *Id.* (emphasis in original). As the Court has not yet issued the Claim Construction Order, the January 1, 2022, deadline is obviously now moot, wherein the aforementioned deadline of four months after the Claim Construction Order issues now controls.

**B.      No Claim Construction Has Taken Place**

In its present premature Motion, Classified's non-infringement arguments rely entirely upon its own unilateral, self-serving claim construction. However, the Court has not yet ruled on the construction of any claim terms. Similar to what the Court admonished in Classified's prior premature dispositive motions, the present Motion is requesting the Court to rule on non-infringement "…before the Court construed the relevant patent claims, thus asking the Court to ***impermissibly bypass claim construction***[.]" ECF No. 52 at 1. Classified is again attempting to perform claim construction on a basis other than that as delineated by the Pretrial Scheduling Order, which is essentially a request to modify that Pretrial Scheduling Order. However, Classified has not at all followed procedure as laid out in Local Rule 16.3, Modification of a Scheduling Order. For example, LR 16.3(a) requires that any modification of the scheduling order must be done on motion, in accordance with LR 7.1(b)—which itself requires, before the filing of any non-dispositive motion, that the parties conduct a meet-and-confer per LR 7.1(a), something which Classified did not do. Further, LR 16.3(b) requires that the party moving for a modification

of the scheduling order "…must: (1) establish good cause for the proposed modification: and (2) explain the proposed modification's effect on any deadlines." Again, Classified has done none of this. In filing its premature Motion, before the Court has ruled on claim construction in accordance with the present Pretrial Scheduling Order, Classified is simply doing an end-run around the same. Clearly, Classified does not want to conduct claim construction in accordance with the Pretrial Scheduling Order. Classified is simply attempting to unilaterally construe terms in a manner of its own choosing, and then have the Court rule on infringement with one fell swoop. Not only is such an attempt improper, but contrary to the Pretrial Scheduling Order. *See, e.g.*, ECF No. 32, ¶ (e).

Proper construction of the claims is essential to Halverson in order to fully respond to Classified's Motion. As the Court is not obligated to adopt the proposed construction of either party, and to the extent Classified now relies entirely upon *proposed* constructions, the Court's construction may ultimately differ. As such, Halverson is hereby prejudiced by having to respond to any other claim construction other than that as provided by the Court. Classified's early, premature Motion should be outright denied as being contrary to not only the Court's clear instructions that the issues raised therein could not be considered until a *Markman* hearing had been conducted, but as an inappropriate request to modify the present scheduling order in contravention to LR 16.3. Alternatively, Classified's Motion should at least be continued under Fed. R. Civ. P. 56(d) until proper claim construction and a *Markman* hearing has been completed in accordance with the Court's Pretrial Scheduling Order.

**C.      Expert Discovery Has Not Yet Even Opened, Let Alone Closed**

Classified asserts that expert discovery in this matter has closed. ECF No. 54 at 2. This is <u>false</u>.  Paragraph (g) of the Pretrial Scheduling Order addresses expert discovery. ECF No. 32.  As contained therein, each party anticipated calling at least two experts for trial, one in the field of Mechanical Engineering and the other in the field of damages.  *Id.*, ¶ (g)(1).  The deadline for identifying either expert witness was not until "…**fifteen [15] days** after the Court issues the claim construction order." (emphasis in original) *Id., ¶* (g)(2)(A)(i).   Alternatively, the Pretrial Scheduling Order allows that if the Court affirmatively "states" that it will not be issuing a claim construction order, then the parties are still afforded the opportunity to identify experts who will provide a report.  *Id.*, ¶ (g)(2)(A)(ii).  Paragraph (g)(2)(B) of the Pretrial Scheduling Order dictates procedures related to initial expert reports, while paragraph (g)(2)(C) dictates the same for expert rebuttal reports.  *Id.*  Paragraph (g)(2)(B)(ii) again provides an alternative in the event that the Court "states" that it will not issue a claim construction order.  *Id.* Halverson is unaware of the Court making any such statement, nor has any such claim construction order yet been issued by the Court. In that regard, paragraph (g)(2)(D) of the Pretrial Scheduling Order states that expert discovery does not end until "…**sixty (60) days** after the Court issues the Claim Constructions Order." *Id.*   As the Court has not issued any Claim Construction Order, expert discovery has not yet opened, let alone closed, and Classified's assertions to the contrary are <u>false</u>.

Considering the aforementioned, Classified's assertions that no party identified an expert witness, produced an expert witness report, nor conducted expert discovery is

completely non-sensical. ECF No. 54 at 2.  While it is true that neither party identified an expert witness *for purposes of claim construction*, that in and of itself does not prevent nor preclude expert discovery in connection with an infringement analysis *after the Court has issued its ruling on claim construction*.  Nor are such experts required to be identified until *after* the Court has concluded claim construction under the Pretrial Scheduling Order. ECF No. 32, ¶ (g)(2)(A)(i).  Without knowing how the Court has construed the claims, it makes very little sense to conduct expert discovery for purposes of an infringement analysis.

"[S]ummary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Claim construction has not yet occurred.  Expert discovery on infringement issues has not yet opened. The Court has not issued any order in connection with claim construction, and as such, Halverson has had no opportunity to decide, let alone consult, with an expert witness for purposes of performing an infringement analysis.  The potential use of expert witnesses is contemplated and allowed under the Pretrial Scheduling Order.  The information obtained from any potential expert may be necessary to properly perform an infringement analysis.  Further, no expert witness reports nor expert witness depositions have been taken, let alone even scheduled, all of which are contemplated and allowed under the Pretrial Scheduling Order.  Halverson is thus prejudiced by being unable to present potential expert witness testimony, which may be essential to justify its opposition to Defendant's Motion, including facts related to how the construed claims read upon Classified's Accused Product.  Classified's Motion should be denied, or alternatively deferred until claim

construction has been completed by the Court, and any potential expert witness discovery taken.[4] *See,* Fed. R. Civ. P. 56(d).


## IV.   CLAIM CONSTRUCTION

Even if the Court proceeds on the merits of Classified's premature Motion, it should not adopt Classified's erroneous constructions. "[A] bedrock principle of patent law [is] that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water v. Safari Water Filtration*, 381 F.3d 1111, 1115 (Fed. Cir. 2004) (citations omitted). An infringement analysis therefore includes a two-step process in which first the correct claim scope is determined, followed by comparing the properly construed claim to the accused device to determine whether all of the claim limitations are present. *Techsearch, L.L.C. v. Intel Corp.* 286 F.3d 1360, 1371 (Fed. Cir. 2002).  Claim construction is an issue of law for the court. *Markman v. Westview Instr.*, 517 U.S. 370, 391 (1996).  Claim construction is driven by the intrinsic evidence, *i.e.*, the claims, the specification, and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed.Cir. 2005) (*en banc*).  Claim terms are given their ordinary meaning as understood by a person of ordinary skill in the art ("POSITA") in light of the intrinsic evidence. *Id.* at 1312-13.

The level of ordinary skill is a function of many factors, including: "(1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5)

---

[4] DuFault Decl., ¶¶ 2 – 6.

sophistication of the technology; and (6) educational level of active workers in the field." *Daiichi Sankyo Co. Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (citation omitted); *see also Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962-63 (Fed. Cir. 1986). Throughout the entirety of its claim construction analysis, Classified makes no attempt to consider or analyze the claim language from the viewpoint of a POSITA at the time of the invention. *See, e.g., Phillips*, 415 F.3d at 1313.  In fact, not once in its analysis did Classified make any attempt to consider the claim language from the vantage of a POSITA.  During discovery, Classified defined a POSITA as: "A person with a high school education, who has had some exposure to a skid steer, and has had some experience cutting and splitting firewood." DuFault Decl. ¶ 7, Ex. 9, Defendant's Response to Interrogatory No. 11.  During his deposition, Mr. Kelly Olsen, Classified's principal and designer of the Accused Product, testified that he meets the requirements of a POSITA. DuFault Decl ¶ 8, Ex. 10, Olsen Dep. 184:1–185:1.  However, from the standpoint of a POSITA, Olsen refused to provide any meaning for either the terms "loading apparatus" or "rigidly mounted."  *Id.* at 196:11–199:14.  Yet, throughout its analysis, Classified either attacked Halverson's proposed constructions for those terms, or came up with its own out of whole cloth.   As the moving party, Classified carries the burden of showing that its claim constructions are those which best represent what a POSITA would consider the claims to encompass. However, given Olsen's inability to provide even the slightest definition of these terms from the standpoint of an admitted POSITA, a negative inference should attach thereto, at least for purposes of Classified's present Motion.

**A.**     **Classified Improperly Attempts to Construe "Pivot <u>With</u> Said Support Structure <u>About</u> Said Skid Steer Loader Vehicle <u>Via</u> Said Skid Steer Loader"**

Classified purports to begin its "claim construction" analysis by attempting to construe the above 16-word phrase, even though Classified did not identify it, or any of these terms, in its Preliminary Proposed Constructions as required to Paragraph (e)(3)(C) of the Pretrial Scheduling Order. DuFault Decl. ¶ 10, Ex. 12. Nor did any of these terms end up in the Status Report.  ECF No. 46-1.  Classified asserts that it need not have identified that phrase "because the terms plainly and ordinarily mean what they say…." ECF 54 at 15.  Classified now takes this position despite having identified the terms "loading apparatus" and "rigidly mounting" in its Preliminary Proposed Constructions, wherein Classified's proposed construction was "Plain meaning," as reproduced below (and which Classified maintained in the Status Report (*See,* ECF No. 46-1)):

Pursuant to Paragraph (e)(3)(C) of the Pretrial Scheduling Order (Doc. 32), Defendant hereby provides its preliminary proposed constructions.

| Claim(s) | Term, Phrase or Clause | Classified's Preliminary Proposed Construction |
|---|---|---|
| 1, 5, 13, 14 | "loading apparatus" | Plain Meaning |
| 1, 13 | "rigidly mounted" | Plain Meaning |

As Classified neither identified the 16-word phrase, nor any of the terms contained therein, Classified's attempt to construe the same now is in contravention to the Pretrial Scheduling Order, and Classified should be estopped from attempting to construe them. This is underscored by the fact that while Classified states that these terms "plainly and

ordinarily mean what they say[,]" Classified nonetheless spends the next seven pages of its brief attempting to construe them. Somehow, after seven pages of dialog wherein no time is spent analyzing the claim language itself, but instead immediately focuses on importing limitations from the specification, Classified concludes that the aforementioned 16-word phrase requires "[o]ne and only one pivot point [being] located where the entire 'firewood processor attachment' is attached to the skid steer loader vehicle." This is completely non-sensical and has no basis in the claim itself.

**B.      Halverson Properly Construes the Terms "Loading Apparatus" and "Rigidly Mounted."**

As identified in the Status Report, Halverson has proposed the following constructions of the above-identified claim terms, each found in at least claim 1 of the '618 patent:

- Loading Apparatus: The terms "loading apparatus" should be construed to mean a set of materials or equipment for transferring logs from the ground to the wood processor.

- Rigidly Mounted: The terms "rigidly mounted" should be construed to mean that the loading apparatus is inflexible or non-pivotal at the interface where the loading apparatus extends from the support structure.

ECF No. 46-1.

Classified erroneously asserts that the "rigidly mounted" aspect of claims 1 and 13, with respect to the "loading apparatus," means that the <u>entirety</u> of the loading apparatus is rigid. In effect, Classified is rewriting the claims to include limitations that simply are not there. In this instance, Classified rewrites claims 1 and 13 to include the limitation "entire" with respect to the "rigidly mounted" aspect of the "loading apparatus." In its previous

motion for summary judgment, Classified took the position that "…the claim limitation that 'said loading apparatus is rigidly mounted… to pivot with [the] support structure…," must properly be construed to mean 'said [entire] loading apparatus….'" ECF No. 35 at 3. Classified now seems to have changed course entirely, having put forth no proposed construction for either "loading apparatus" or "rigidly mounted," instead proposing that those terms should simply have their "[p]lain meaning." *See,* ECF No. 46-1. Classified nonetheless now argues that "loading apparatus" should be limited to its "grapple," and/or that "rigidly mounted" means that the entirety of the loading apparatus is rigid unto itself. However, not only is there no support for reading either of these limitations into the claims, but by doing so Classified frustrates the claims as it makes the "loading apparatus" essentially unworkable.

Moreover, throughout the entirety of its analysis, Classified immediately turns to the specification in order to import limitations of the preferred embodiment, which is impermissible.  For example, when Classified first delves into claim construction, the very first thing Classified does is to compare the claim language with embodiments of the specification. ECF No. 54 at 15–16. This is a classic bait-and-switch tactic which is wholly impermissible when properly construing claim language.

A "patentee is entitled to the full scope of his claims, and [courts] will not limit him to his preferred embodiment or import a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed.Cir. 2009); see also, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed.Cir. 2005) (Courts must not "import[] limitations from the specification into the claim."). "[C]laims, not specification embodiments, define

the scope of patent protection." *Kara Tech.*, 582 F.3d at 1348.   Limiting claims to a preferred embodiment, *i.e.*, disavowing broad scope, "requires that the specification or prosecution history make clear that the invention does not include a particular feature, or is clearly limited to a particular form of the invention." *Hill-Rom Servs., Inv. v. Stryker Corp.*, 755 F.3d 1367, 1371-72 (Fed.Cir. 2014) (citations omitted).   "The standards for finding … disavowal are exacting" and require clear indication the invention "requires" a feature. *Id*. at 1371; Cf. *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1367 (Fed.Cir. 2007).  In short, any narrowing or disclaimer must be "clear and unambiguous." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-25 (Fed.Cir. 2003).

Generally, "the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).  To avoid improperly importing limitations into the claims, "it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Phillips,* 415 F.3d at 1323.  Thus, when reviewing the intrinsic evidence to construe the claims, courts must "strive to capture the scope of the actual invention, rather than strictly limit the scope of claims to disclosed embodiments or allow the claim language to become divorced from what the specification conveys is the invention." *Retractable Techs.*, 653 F.3d at 1305 (citing *Phillips,* 415 F.3d at 1323-24). Thus, the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips*,

415 F.3d at 1323; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002))); *accord Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797-800 (Fed Cir. 2019) (declining to read limitation into claim terms that were given the "plain and ordinary meaning").

 1.    "Loading Apparatus"

Classified invariably asserts that the terms "loading apparatus" should be given its plain and ordinary meaning, but then insists that the "loading apparatus" is either entirely rigid unto itself, or alternatively, that its "grapple" is the only item that can be considered a "loading apparatus." In so doing, Classified looks past the definition of that term from the standpoint of a POSITA, as well as its plain and ordinary meaning.

As one looks at the terms "loading apparatus," it is plainly clear that the subject is "apparatus" and that the term "loading" modifies that term to define its function. Thus the initial focus of the inquiry is on the term "apparatus," which is a commonly understood term. As such, the Court may consider standard dictionary definitions helpful, such as the following: "a set of materials or equipment designed for a particular use...;"[5] "a group or combination of instruments, machinery, tools, materials, etc., having a particular function or intended for a specific use...;" or "any complex instrument or mechanism for a particular

---

[5] *See*: https://www.merriam-webster.com/dictionary/apparatus  last accessed January 10, 2022.

purpose."[6] The commonality shared between each of these dictionary definitions is that an apparatus comprises more than one part, and is not limited to a single part *per se.* There is nothing in the claims themselves that would detract from this common and ordinary meaning of that term.  Nor does the specification teach away from the common and ordinary meaning. This construction is also consistent with the plain and ordinary meaning as understood by a POSITA in light of the specification.

Halverson has thus proposed that "loading apparatus" should be construed as a set of materials or equipment for transferring logs from the ground to the wood processor. This construction is consistent with both the internal claim as well as the specification. Nothing internally within the claims limits the structure of the loading apparatus.  Further, the specification uses the terms "loading apparatus" to refer to a part of the support structure which serves to transfer logs from the ground or other place. ECF No. 1-1, '618 patent, 4:22 – 30.

2.   "Rigidly Mounted"

Classified asserts, on the one hand, that the terms "rigidly mounted" need be construed no further than its plain and ordinary meaning, and on the other hand should be construed to mean that the element it modifies, namely the "loading apparatus" and its *connection* to the "support structure" should be construed to mean that the entirety of the loading apparatus is rigid unto itself.  Halverson, however, has proposed that "rigidly mounted" should be construed to mean that the loading apparatus is inflexible or non-pivotal at the interface where the loading apparatus extends from the support structure.

---

[6] *See*: https://www.dictionary.com/browse/apparatus  last accessed January 10, 2022.

This construction is consistent with both the internal claim as well as the specification. Nothing internally within the claims limits the structure of the loading apparatus.

First, looking at the claims themselves, there are two instances where the term "rigidly" is found in either of independent claim 1 or 13; each instance is in connection with how one element <u>mounts</u> to another element.  In the first instance, the support structure is "rigidly mounted" to the skid steer loader.  In the second instance, the loading apparatus is in turn "rigidly mounted" to the support structure.  In other words, the "rigidly" element modifies the <u>mounting</u> <u>aspect</u> of the support structure to the skid steer loader, and the loading apparatus to the support structure.  The term "rigidly" is not a characteristic of the structures themselves.

Moreover, both the words "rigidly" and "mounted" are common terms. As such, the Court may consider standard dictionary definitions helpful, such as the following:

- Rigid: deficient in or devoid of flexibility.[7]
- Mounted: to attach to a support.[8]

 These dictionary definitions are in line with Halverson's proposed construction. There is nothing in the claims themselves that would detract from this common and ordinary meaning of that term.  Nor does the specification teach away from the common and ordinary meaning. This construction is also consistent with the plain and ordinary meaning as understood by a POSITA in light of the specification.   As defined by each of claims 1 and 13, the purpose of the loading apparatus being "rigidly mounted" to the support structure is so that the loading apparatus pivots "…with said support structure

---

[7] *See,* https://www.merriam-webster.com/dictionary/rigid , last accessed January 11, 2022.
[8] *See,* https://www.merriam-webster.com/dictionary/mounted , last accessed January 11, 2022.

about said skid steer loader vehicle….."  In other words, if the support structure is tilted or pivoted by action of the skid steer loader, the "rigidly mounted" support structure, and in turn the "rigidly mounted" loading apparatus, move in like manner.  There is no language in any of the claims indicating that the entirety of the loading apparatus is rigid unto itself.

In its Memorandum, Classified heavily relies upon the prosecution history of the '618 patent to improperly assert claim prosecution disclaimer or disavowal.  Classified asserts that, based upon arguments Halverson made responsive to a prior-art rejection, "loading apparatus" must be construed to be entirely rigid unto itself. However, a closer reading of the pertinent prosecution history does not support this.  First, responsive to an Office Action in which U.S. Pat. No. 3,862,651 ("Heikkinen") was cited in a novelty rejection, Halverson amended claims 1 and 16 (the latter which issued as claim 13) to define the invention as having, *inter alia*, a loading apparatus "rigidly mounted to said support structure to pivot with said support structure about said skid steer loader vehicle….." ECF No. 34-2 at 28 – 29.  In support of the amendment, Halverson stated:

> …Heikkinen utilizes a trailer type vehicle which is not capable of pivoting the support frame, the arms (reference numerals 20 and 21) are required to pivot about the support frame when loading timber onto the conveyor.  In addition to the referenced figure, the functioning of the arms is clearly stated in Hiekkinen, column 2 paragraph starting on line 9, "*More specifically, loading rack 12 comprises a pair of arms 20 and 21 that are adjustable and extendible to rest on the ground when the machine 10 is to be loaded with timbers. ... Loading rack 12 is **pivotally mounted** to frame 11 by a pair of pin joints 22 so that by application of pressure to hydraulic ram 24 the loading raises loading rack 12 so the timbers or rack 12 can be slid onto bed 13.* (bolded emphasis added) *Id.,* at 29.

It was in this context that Halverson amended claims 1 and 13 to define how the loading apparatus *mounted* to the support structure.  Whereas Hiekkinen taught a pivotally mounted

loading apparatus, Halverson's invention taught a <u>rigidly</u> <u>mounted</u> one (i.e., one that did not pivot ***at the mounting point to the support structure***).  Again, the focus here is on the mounting of the loading apparatus to the support structure, not whether the loading apparatus is rigid unto itself.  Moreover, as can been seen in the below Figure 1 of Heikkinen, arms 20 and 21 (which form a part of loading rack 12) do not pivot with respect to themselves, as can be confirmed by Heikkinen's specification:

> Loading rack 12 is pivotally mounted to frame 11 by a pair of pin joints 22 so that by application of pressure to hydraulic ram 24 the loading raises the loading rack 12 so the timbers or rack 12 can be slid onto bed 13.  ECF No. 34-3 at 3, 2:13–17.



*FIG. 1*

In other words, Heikkinen's "loading apparatus" is entirely rigid.  Clearly, Halverson's amending of the claims to define the invention as having a rigidly mounted loading apparatus was to distinguish itself from the <u>pivotal</u> <u>mounting</u> nature of Heikkinen's loading rack (12) which pivotally attached to frame (11) by a pair of pin joints (22), and <u>not</u> to distinguish from Heikkinen's already rigid arms.  In that regard, it would make no sense to amend the claims to define the invention as having the loading apparatus be entirely rigid unto itself to overcome a novelty rejection when the referenced prior art

already had a rigid loading apparatus.  It is in this proper context that the following passage

from the Amendment should be read:

> The loading apparatus … rigidly extends from the support structure in a non-pivotal manner with respect to the support structure.  The loading apparatus is pivoted by the skid steer loader vehicle when pivoting the support frame to load the conveying unit… with lumber…. Heikkinen would have no reason or motivation to pivot the support frame since the arms shown in Hiekkinen *already are pivotally mounted*. (emphasis added) ECF No. 34-2 at 29.

Contrary to Classified's erroneous assertion, the aforementioned does not at all require that

the loading apparatus be entirely rigid unto itself.  The distinguishing characteristic

between Halverson's invention and that of Heikinnen was how the <u>loading apparatus</u>

mounted to the support structure, wherein the overall structure of the loading apparatus

itself was irrelevant.

This is also consistent with the language elsewhere in claims 1 and 13 in reference

to the loading apparatus extending from the support structure (i.e., "wherein said loading

apparatus extends from said receiving end [of the support structure])." If the entirety of the

loading apparatus were to be rigid, which Classified asserts claims 1 and 13 were amended

to include so as to get past the Heikkinen reference, then it would logically follow that the

Examiner would have required that the term "rigid" would have to be inserted between the

terms "apparatus" and "extends" in the aforementioned "wherein" clause.   This the

Examiner did not require, as again the focus was on the mounting aspect between the

loading apparatus and support structure, not the entirety of the support structure itself.

Classified nonetheless argues for a narrowing of the "plain an ordinary meaning" of

"rigidly mounted" to mean that not only is the mounting of the loading apparatus to the

support structure rigid, but also every subcomponent of the "apparatus" even though the claims do not explicitly recite that.  By way of analogy to a hypothetical flagpole apparatus, one could have a flagpole "rigidly mounted" to the ground, but the remainder of the flagpole apparatus can still have ropes and pulleys that move/operate relative to the pole to raise a flag up the pole.  Classified is simply trying to improperly read-in a negative limitation to the plain and ordinary meaning of "loading apparatus" by requiring that the entirety of the apparatus must be rigid.

**B.     Classified Improperly Construes the Term "Attached"**

Classified asserts that the "plain and ordinary meaning" of the term "attached" in connection with the "conveyor unit" of claims 1 and 13 of the '618 patent can only be construed as "connected directly." ECF No. 54 at 43.  In so doing, though, Classified once again is guilty of what it accuses Halverson of doing in connection with its infringement contentions, namely that Classified is attempting to insert a limitation into a claim that is simply not there.

In its analysis, Classified makes no attempt to consider or analyze the claim language from the viewpoint of a POSITA at the time of the invention. *See, e.g., Phillips*, 415 F.3d at 1312-13 (Claim terms are given their ordinary meaning as understood by a POSITA in light of the intrinsic evidence.).  For example, an ordinary and customary definition of "attach" includes: to fasten or affix; join; connect.[9]  Such a meaning does not, in and of itself, require that such attachment be "direct."

---

[9] *See,* https://www.dictionary.com/browse/attach, last accessed January 11, 2022.

In fact, as was discussed in connection with Classified's construction of "loading apparatus," Classified made no attempt whatsoever to even define a POSITA.  Instead, Classified performs a slight-of-hand, first by asserting that the claims themselves "confirm" that "attached" means "connected directly," even though there is not a single instance in the claims where the term "directly" modifies the term "attached."[10]   Then, Classified jumps to the specification in an attempt to import the "direct" limitation into the claims, indicating that the drawings show the conveyor unit "directly attached" to the support structure.  However, this is entirely improper. A "patentee is entitled to the full scope of his claims, and [courts] will not limit him to his preferred embodiment or import a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed.Cir. 2009). "[C]laims, not specification embodiments, define the scope of patent protection." *Kara Tech.*, 582 F.3d at 1348.  Classified finally throws its hands up, insisting that because the prosecution history provided no insight to the meaning "attached," then its construction of "connected directly" must be adopted.  This makes no sense.  For example, by way of analogy, employing Classified's logic, a leaf cannot be considered attached to a tree because the leaf first attaches to a branch.   Alternatively, and again by way of analogy, employing Classified's logic, a hand is not attached to the body of a person because the hand is first attached to an arm.   Clearly, such reasoning is erroneous.

---

[10] The term "directly" is found in claims 12 and 16 of the '618 patent to describe the relative position of the ram, so clearly the patentee was aware of and used that term when it intended to do so.

Classified also cites two cases out of California, one from the Northern District and the other from the Southern District, to support its construction of "connected directly." However, neither case is controlling authority in this District. More important, the claim construction determinations were arrived at *after* claim construction and a *Markman* hearing had taken place. That is simply not the case here.

The terms "attached to" should be construed to mean joined or connected so as to be supported by. Alternatively, if the Court adopts Classified's narrow construction of the term "attached," Halverson respectfully requests leave to amend its infringement contentions to include, with respect to the conveyor unit, infringement under the doctrine of equivalents. Contrary to Classified's assertion, the doctrine of equivalents is available to Halverson on this point as none of the amendments to the claims 1 or 13 touched on the conveyor unit, and prosecution history estoppel does not apply. *See, Aquatex Industries, Inc. v. Techniche Solutions*, 479 F.3d 1320, 1325-27 (Fed. Cir. 2007).

## IV.   DISPUTE OVER MATERIAL FACTS PRESENTLY EXIST

Summary judgment shall be awarded to a party if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The movant for summary judgment must show absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *See, Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In determining whether summary judgment is proper, the Court must view evidence "…in the light most favorable to the nonmoving party." *Roers v. Countrywide Home Loans, Inc.*, 728 F.3d 832, 835 (8th Cir. 2013) (quoting *Dush v.*

*Appleton Elec. Co.*, 124 F.3d 957, 962–63 (8th Cir.1997) (citing *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir.1997)).   Summary judgment is therefore only appropriate when reasonable minds could not differ on the inferences arising from the undisputed facts.

### A. There Presently Exists a Dispute Pertaining To What Constitutes a "Loading Apparatus" In The Accused Product

Setting aside the parties' claim construction dispute over the terms "loading apparatus," there also presently appears to be a dispute of material fact over what can be determined to be a "loading apparatus" in Classified's Accused Product.   For example, Halverson has identified the structure shaded in orange in the below reproduction as meeting the "loading apparatus" element of at least claim 1 of the '618 Patent, wherein such structure includes the upwardly extending arms and grapple:



Plaintiff's Claim Chart, ECF No. 34-4 at 6.

To the contrary, Classified denies that its Accused Product even has a "loading apparatus," asserting that its Accused Product instead has a "grapple", as shown below outlined in red:



wherein said support structure includes a receiving end, a working end and a loading apparatus, (ABSENT: SSP-180 does not include a "loading apparatus," but rather has a grapple. Admit: support structure includes a receiving end and a working end)

DuFault Decl., ¶ 9, Ex. 11, Classified Non-Infringement Claim Chart at 4.

Throughout the entirety of its brief, Classified's position is that the Court must accept its "grapple" as the "loading apparatus," despite not having put forth any evidence to support such a position.   A position that also runs contrary to the testimony of Classified's own principal, who acknowledged that the height of the upwardly extending arms played a role in how the Accused Product is able to pick up logs.

Q. Is the -- the height of the arms, is that an important factor in this type of device?
A. Well, I mean, of course. …
…

Q. … [D]o the length of the arms have anything to do with being able to position the grapple to be able to pick up a log?
A. I mean, of -- yes. I mean, yes, of course.

*See,* DuFault Decl.., ¶ 10, Olsen Dep. Transcript, 103:13–15 and 106:3–8; Ex. B.

So, despite Classified's assertions to the contrary within its brief, at a minimum, the upwardly extending arms of the Accused Product, which Halverson shaded as orange

in its claim chart above, have at least some connection to how logs are loaded by the grapple, and as such, for purposes of the present Motion, must be viewed in the light most favorable to Halverson.   In so doing, Classified's entire non-infringement analysis as contained in section V(B) of its brief fails, as such analysis hinges upon Classified's position that only its grapple can be considered to meet the "loading apparatus" element of Claims 1 and 13.

Moreover, as the terms "loading apparatus" have yet to be construed by the Court, Halverson has not yet been able to obtain expert discovery to rebut Classified's assertion that only its grapple could be considered the "loading apparatus."   Halverson is thus prejudiced by being unable to present expert witness testimony essential to justify its opposition to the present Motion, including facts to rebut Classified's assertion that only its grapple could be considered the "loading apparatus."   Classified's Motion should be denied, or alternatively deferred until claim construction has been completed by the Court, and any potential expert witness discovery taken.[11] *See,* Fed. R. Civ. P. 56(d).

### B.  Classified Is Unable To Show That The "Conveying Unit" Is Not Attached To The Support Structure

Even if the Court adopts Classifieds narrowing of the term "attached" to mean "directly attached,"—which it should not—Classified's theory that the conveying unit (or member) in the Accused Product does not "directly attach" to the support structure is incorrect and does preclude a finding of infringement.   As shown in the reproduced claim chart below, Halverson contends that the conveying unit (shaded in yellow) attaches to the

---

[11] DuFault Decl., ¶¶ 2 – 6.

support structure via the loading apparatus (which was shaded in orange in Halverson's claims chart reproduced in the previous section, *supra*):

<table>
<tr>
<td>a conveyor unit including a conveying member, wherein said conveyor unit is attached to said support structure and wherein said conveying member travels between said receiving end and said working end; and</td>
<td>Literally present in Accused Product.<br><br>The top image at the right shows the conveyer unit (yellow) attached to the support structure (via the loading apparatus), wherein the conveying member (red arrows) travels between said receiving end and said working end.</td>
<td></td>
</tr>
</table>

Plaintiff's Claim Chart, ECF No. 34-4 at 8.

Classified contends that there is a demarcation between what Halverson has identified as the "loading apparatus" and the "support structure," and because the conveying unit is not "directly attached" to the "support structure," but instead to the "loading apparatus," then this element of either of claims 1 or 13 is not met.  What Classified does not do in its analysis, however, is carefully read the language of either claim 1 or 13 (which for purposes of this point, is the same).  For example, claim 1 defines the invention, in part, as comprising… "a support structure…wherein said <u>support structure</u> ***includes*** … ***a loading apparatus***."  The term "includes" in claim language is an open-ended term which, in this case, means that whatever follows is a part of the <u>support structure</u> itself.  In other words, the "loading apparatus" is a sub-structure of the "support structure," and as such, the "loading apparatus" is a part of the "support structure."  In that regard, even if Classified's narrow view of "attach" is adopted, the conveying unit being "directly attached" to the loading apparatus, which is a sub-structure of the support

structure, is still directly attached to the overall support structure, and this element of the claim is met.  In so doing, Classified's motion for summary judgment on this point fails.

## V.      CONCLUSION

Based upon the foregoing, summary judgment is not proper at this time.  Classified's unilateral claim constructions, made outside the Court's Pretrial Scheduling Order, and prior to conducting a *Markman* hearing, are premature and do not stand up to scrutiny.  As the entire basis for Classified's non-infringement analysis depends upon the adoption of its unilateral claim construction, constructions the Court should not adopt, Classified's motion for summary judgment of non-infringement fails.  As such, the Court should deny Classified's Motion in its entirety or, alternatively, defer considering Classified's Motion under Fed. R. Civ. P. 56(d).


Dated:  January 11, 2022                          Respectfully submitted,

                                                                By: *s/Dustin R. DuFault*
                                                                      Dustin R. DuFault (302,776)
                                                                      **DuFault Law Firm, P.C.**
                                                                      PO Box 1219
                                                                      Minnetonka, MN 55345
                                                                      Tel: (952) 935-4392
                                                                      Fax: (866) 936-4542
                                                                      Dustin@DuFault-Law.com

                                                                      **ATTORNEY FOR PLAINTIFF**
                                                                      **Halverson Wood Products, Inc.**