## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

HALVERSON WOOD PRODUCTS, INC.,

                          Plaintiff,

v.

CLASSIFIED SYSTEMS LLC, d/b/a
HAMMERHEAD ATTACHMENTS,

                          Defendant.

Civil No. 20-801 (JRT/LIB)

**MEMORANDUM OPINION AND ORDER
ADOPTING CLAIM TERMS**

---

Dustin R. DuFault, **DUFAULT LAW FIRM PC**, PO Box 1219, Minnetonka, MN 55345, for plaintiff.

Joseph A. Uradnik, **URADNIK LAW FIRM PC**, PO Box 525, Grand Rapids, MN 55744; R. William Beard, Jr., **SLAYDEN GRUBERT BEARD PLLC**, 401 Congress Avenue, Suite 1650, Austin, TX 78701, for defendant.

Plaintiff Halverson Wood Products, Inc. ("Halverson") filed this action against defendant Classified Systems LLC ("Classified") due to alleged direct patent infringement under 35 U.S.C. § 271(a). Halverson is the owner of a patent for a "Wood Processor Attachment for Skid Steer Loader" and alleges that Classified's Hammerhead SSP-180 Pro ("SSP-180" or the "Accused Product"), a firewood processing attachment, infringes every limitation of at least Claim 1 in its patent. After Classified, for a second time, moved for summary judgment, the Court determined that a claim construction hearing was necessary and directed the parties to submit their written claim construction materials.

The parties dispute the construction of five terms.  For the reasons explained below, the Court sets forth its construction of the disputed terms.

## BACKGROUND

Halverson is a Minnesota corporation with its principal place of business in Pine River, Minnesota.  (Compl. ¶ 1, Mar. 25, 2020, Docket No. 1.)  Halverson is the owner by assignment[1] of U.S. Patent No. 7,669,618 ("the '618 Patent"), titled "Wood Processor Attachment for Skid Steer Loader."  (*Id.* ¶¶ 10–11.)  The '618 Patent relates to an attachment for "efficiently cutting and splitting logs" into usable firewood.  (*Id.* ¶ 10.)  Halverson primarily manufactures and sells the patented attachment.  (Compl. ¶ 1.)

Claim 1 of the '618 Patent recites the following features of the attachment:[2]

1.   A wood processor attachment for skid steer loader, comprising:
   a skid steer loader vehicle;
   a support structure **rigidly mounted** to said skid steer loader vehicle, wherein said support structure is adapted to be pivoted by said skid steer loader vehicle;
   wherein said support structure includes a receiving end, a working end and a **loading apparatus**, wherein said receiving end is opposite said working end and wherein said **loading apparatus** extends from said receiving end;
   wherein said **loading apparatus** is **rigidly mounted** to said support structure to pivot with said support structure about said skid steer loader vehicle via said skid steer loader vehicle;
   a **conveyo**r **unit** including a **conveying member**, wherein said **conveyor unit** is **attached to** said support structure and wherein said

_____

[1] The '618 Patent was originally issued to Glen Halverson, the inventor of the attachment, but Halverson is now the owner by assignment of the entire, right, title and interest of the patent. (Compl. ¶¶ 10–11.)

[2] For convenience of reference, the disputed claim terms have been emphasized.

> **conveying member** travels between said receiving end and said working end; and
>
> a cutting unit **attached to** said support structure, wherein said cutting unit is adjacent to said working end.

(Decl. Dustin R. DuFault ("DuFault Decl."), Ex. 13 at 8:39–60, May 10, 2022, Docket No. 65–1; *see also* Compl. Ex. B at 1–2, Mar. 25, 2020, Docket No. 1–2.)

Classified is a limited liability company based in Duluth, Minnesota. (Compl. ¶ 2.) Classified manufactures and sells firewood processing accessories for skid steer loaders, including the Accused Product. (*Id.* ¶ 13; Compl., Ex. B at 1–3.)

On November 1, 2019, Halverson sent Classified a letter with a copy of the '618 Patent and asserted that the SSP-180 infringes every element of at least Claim 1 of the '618 Patent. (Compl. ¶14; Ex. B at 1–3.) On March 25, 2020, Halverson initiated this action alleging two counts: (I) infringement of U.S. Patent No. 7,669,618 under 35 U.S.C. § 271(a); and (II) active Inducement of Infringement of U.S. Patent No. 7,669,618 under 35 U.S.C. § 271(b). (Compl. ¶¶ 19–30.) On May 18, 2020, Classified filed a Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. Dismiss, May 18, 2020, Docket No. 8.)

On October 7, 2020, the Court denied Classified's Motion to Dismiss. *See Halverson Wood Prod., Inc. v. Classified Sys. LLC*, No. 20-801, 2020 WL 5947423, at *4 (D. Minn. Oct. 7, 2022). Classified subsequently filed an Answer and Counterclaims against Halverson. (Answer & Countercls., Oct. 20, 2020, Docket No. 25.)

-3-

On February 9, 2021, Classified filed its First Motion for Summary Judgment based on noninfringement.  (1st Mot. Summ. J., Feb. 9, 2021, Docket No. 34.)  On April 12, 2021, the parties filed a Joint Patent Case Status Report including a joint claim construction table, as required by the Pretrial Scheduling Order.  (Joint Patent Case Status Report, Apr. 12, 2021, Docket No. 46.)   In the report, Halverson requested a claim construction hearing, while Classified believed claim construction could be decided through written submissions.  (*Id.* at 1.)

The Court denied Classified's Motion for Summary Judgment on July 19, 2021. (Order Denying 1st Mot. Summ. J., July 19, 2021, Docket No. 52.)  Following the Court's denial, Classified filed a Second Motion for Summary Judgment arguing that its product does not infringe the '618 patent as a matter of law.  (2nd Mot. Summ. J., Dec. 21, 2021, Docket No. 53.)

After reviewing the parties' memoranda addressing Classified's Second Motion for Summary Judgment, the Court concluded that additional briefing was required on the claim construction disputes.  (Order Re: Claim Construction Briefing at 1–2, Apr. 19, 2022, Docket No. 61.)  The Court held Classified's Motion and the hearing on the Motion in abeyance pending claims construction, and the parties filed their briefs and declarations supporting their proposed constructions.

-4-

**DISCUSSION**

## I.    STANDARDS OF CLAIM CONSTRUCTION

Claim construction is a question of law for the Court. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002). "The purpose of claim construction is to determine the meaning and scope of the patent claims that the plaintiff alleges have been infringed." *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1381 (Fed. Cir. 2009). Claim terms are given their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005). To ascertain this meaning and define the scope of the invention, courts look to the words of the claims themselves, the specification, and the prosecution history of the patent. *Id.* at 1314.[3]

"[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. The context of the surrounding words of the claim term may be instructive on the ordinary and customary meaning of the term. *Id.* (internal quotation marks and citation omitted). Courts also consider "[o]ther claims of the patent in question, both asserted and unasserted," to determine the ordinary and customary meaning of a claim term. *Id.* "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate

---

[3] *See also Masco Corp. v. United States*, 303 F.3d 1316, 1324 (Fed. Cir. 2002); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83 (Fed. Cir. 1996).

the meaning of the same term in other claims." *Id.* Differences in the claim language can also be a useful guide, and "different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) (internal citations omitted).

Claims do not stand alone but are part of "a fully integrated written instrument," which includes the specification. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed Cir. 1995); *Phillips*, 415 F.3d at 1315. The specification is the "single best guide" to the meaning of a disputed term, and "claims must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (internal quotation marks and citation omitted). Courts, however, will not import a limitation from the specification into the claims. *Id.* at 1320. The Federal Circuit has "repeatedly warned against confining the claims to. . .embodiments" described in the specification. *Id.* at 1323.

The patent's prosecution history should also be considered as intrinsic evidence. *Id.* at 1317. The prosecution history "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Id.* The prosecution history, however, "often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* But the prosecution history may still "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of

prosecution, making the claim scope narrower than it would otherwise be." *Id.* (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83 (Fed. Cir. 1996).

Although the intrinsic evidence mentioned above is of primary importance in construing a patent's claim terms, the Court may also rely on extrinsic evidence. Extrinsic evidence consists of "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Extrinsic evidence is less significant than intrinsic evidence in construing claim terms and cannot establish a meaning of the claim term that is at odds with the intrinsic evidence. *Phillips*, 415 F.3d at 1317–18.

There are two exceptions to the rule that a claim term must be given its ordinary and plain meaning: (1) when a patentee sets out their own definition of the term, or (2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Thus, a claim term should not be limited simply because all of the embodiments contain that particular limitation. *Id.* at 1366. Any disclaimer or disavowal must be a "clear and unmistakable" expression of the limitation. *Id.* at 1366–67.

## II.   ANALYSIS

### A. LOADING APPARATUS

| Classified's Proposed Construction | Halverson's Proposed Construction | Adopted Construction |
|---|---|---|

| Plain and ordinary meaning. | The terms "loading apparatus" should be construed to mean a set of materials or equipment for transferring logs from the ground to the wood processor. | Equipment for transferring logs from the ground to the wood processor. |
|---|---|---|

The parties' dispute over the construction of the term "loading apparatus" centers on their disagreement regarding the need for any construction at all.  Classified contends that the Court should adopt the plain and ordinary meaning of the term while Halverson argues that the Court should construe the term to mean a "set of materials or equipment for transferring logs from the ground to the wood processor" in order to fully resolve the parties' dispute and to avoid any risk of additional limitations being read into the term.

The Court agrees that a plain and ordinary meaning may inadequately resolve the parties' dispute.  Classified has argued that the plain and ordinary meaning of the term means that the loading apparatus "is included in and rigidly mounted to the support structure to 'pivot with said support structure about said skid steer loader vehicle via said skid steer loader vehicle.'"  (Def.'s Mem. Supp Construction at 5, May 10, 2022, Docket No. 66.)  This is contrary to Halverson's proposed construction which aligns with both the dictionary definition of apparatus and the '618 Patent itself.  (DuFault Decl., Ex. 13 at 4:28–30 (describing the loading apparatus serves "to transfer logs[] from the ground... to the conveyor unit[]."); DuFault Decl., Ex. 20, May 10, 2022, Docket No. 65-8 (defining apparatus as "a set of materials or equipment designed for a particular use.")) Given the

-8-

parties' dispute and the likelihood that a plain and ordinary construction will not fully resolve the issue, the Court rejects Classified's proposed construction. *O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) (noting that determining a claim has a "plain and ordinary meaning" may be inadequate when reliance on a term's "ordinary" meaning does not resolve the parties' dispute).

However, the Court is not convinced that Halverson's proposed construction is without fault. Several district courts have acknowledged that claim language rendering subsequent language redundant or superfluous is "rarely correct." *Solutran, Inc. v. U.S. Bancorp & Elavon, Inc.*, No. 132637, 2017 WL 2274959, at *9 (D. Minn. May 24, 2017).[4] Halverson's inclusion of the term "set of materials" is redundant when read together with the term "equipment" and the Court will omit the former term.

In sum, the Court will construe the term "loading apparatus" as "equipment for transferring logs from the ground to the wood processor."

**B. Rigidly Mounted**

| Classified's Proposed Construction | Halverson's Proposed Construction | Adopted Construction |
|---|---|---|

---

[4] Citing *Luv N' Care, Ltd. v. Jackel Int'l Ltd.*, 115 F. Supp. 3d 808, 823 (E.D. Tex. 2015); *see also Symantec Corp. v. Acronis, Inc.*, No. 11–5310, 2013 WL 752472, at *2 (N.D. Cal. Feb. 27, 2013) (declining to adopt proposed construction because it was "redundant given the surrounding words of the claim"); *Atser Research Techs., Inc. v. Raba–Kistner Consultants, Inc.*, No. 07–CA–93, 2009 WL 691118, at *11 (W.D. Tex. Mar. 2, 2009) (rejecting construction that included "the surrounding words of the claim" as "redundant and unnecessary").

| Plain and ordinary meaning. | The terms "rigidly mounted" should be construed to mean that the loading apparatus is inflexible or non-pivotal at the interface where the loading apparatus extends from the support structure. | The loading apparatus is inflexible or non-pivotal where the loading apparatus extends from the support structure. |
|---|---|---|

Classified claims that a plain and ordinary construction of the term "rigidly mounted" is sufficient and prevents Halverson from improperly inserting the term "interface" into its proposed construction.  Like the previous disputed term, Halverson argues that a plain and ordinary construction insufficiently resolves the parties' dispute.

Halverson proposes that the term should be construed to mean that the loading apparatus is inflexible or non-pivotal at the interface where the loading apparatus extends from the support structure.  According to Halverson, there are two instances where the term "rigidly" is found in either of independent claim 1 or 13, and each describes how one element mounts to another element—such as when the support structure is "rigidly mounted" to the skid steer loader and that the loading apparatus is "rigidly mounted" to the support structure.  Halverson also argues that the prosecution history of the '618 Patent establishes that Halverson amended claims 1 and 13 to differentiate its product from a competing product by detailing that the competing product provided for a pivotally mounted loading apparatus where Halverson's specifically focused on an apparatus that was rigidly mounted.

The Court agrees with Halverson that claims 1 and 13 define the purpose of the loading apparatus being "rigidly mounted" to the support structure so that the loading apparatus pivots "with said support structure" and supports Halverson's construction. However, Classified correctly argues that Halverson's insertion of the term "interface" is unwarranted and unnecessary to Halverson's construction—a sentiment that Halverson conceded at the claim construction hearing.  (Hearing Tr. at 12:7–13 (on file with the Court).)  Because use of the term "interface" is unsupported by the claims, specification, or prosecution history, the Court construes the disputed term "rigidly mounted" to mean "the loading apparatus is inflexible or non-pivotal where the loading apparatus extends from the support structure."

**C. Attached To**

| Classified's Proposed Construction | Halverson's Proposed Construction | Adopted Construction |
|---|---|---|
| Attached [directly] to. | Plain and ordinary meaning **or alternatively**<br><br>joined or connected so as to be supported by. | Joined or connected so as to be supported by. |

Halverson contends that the term "attached to" should be construed as its plain and ordinary meaning and alternatively argues that the term should be constructed to mean "joined or connected so as to be supported by" because none of the uses of the term in the '618 Patent specifically limit it to direct contact.  Conversely, Classified argues

that the Court should construe the term "attached to" to require direct contact because the '618 Patent always uses the term in accordance with such a definition.

The term "attached to" appears in claims 1 and 13 of the '618 Patent, such as when "said conveyor unit is attached to said support structure" or when the claims reference "a cutting unit attached to said support structure."  (DuFault Decl., Ex. 13 at 8:55–56.) Claims 1 and 13, and the dependent claims, also use more definite versions of the disputed term, such as describing "a ram slidably attached upon said lower support," when"said loading apparatus is attached in a non-movable manner to said support structure," and when a clamp or cutter is "pivotally attached to said support structure." (*Id.* at 4:19, 10:50–52, and 16:24–33.)  In short, while the term is sometimes modified to provide slidable or pivotal attachment, the term is never similarly limited to require only direct attachment.  Although Classified is correct that "attached to" can ambiguously constitute both direct and indirect attachment, a "patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope," *Thorner*, 669 F.3d at 1367, and Classified has not demonstrated that the '618 Patent requires the Court adopt a more limited reading requiring only direct attachment.

Classified also attempts to argue that the specification provides support for its construction of the term.  However, it is clear that courts should not import a limitation from the specification into the claims, *Phillips*, 415 F.3d at 1320, and the Federal Circuit

-12-

has "repeatedly warned against confining the claims to . . . embodiments" described in the specification.  *Id.* at 1323.  A "patentee is entitled to the full scope of his claims, and [courts] will not limit him to his preferred embodiment or import a limitation from the specification into the claims."  *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009).

Accordingly, the Court will adopt Halverson's alternatively proposed construction of the term "attached to" and construe the term to mean "joined or connected so as to be supported by."

**D. Conveyor Unit and Conveying Member**

| Classified's Proposed Constructions | Halverson's Proposed Constructions | Adopted Constructions |
|---|---|---|
| §112 ¶6 Means/Function: conveyor STRUCTURE: a trough and a conveying member.<br><br>§112 ¶6 Means/Function: conveying STRUCTURE: a motor, and a toothed chain or a belt circumscribing a longitudinal length of the trough. | The terms "conveyor unit" do not need to be construed past their ordinary and customary meaning. However, if construed, "conveyor unit" should be construed to mean an apparatus that assists in transferring logs from the receiving end to the working end of the wood processor.<br><br>The terms "conveying member" do not need to be construed past their ordinary and customary meaning. However, if construed, Plaintiff contends that the terms | Plain and ordinary meaning. |

| | "conveying member" should be construed to mean a part of the conveyor unit that travels between the receiving end and the working end of the wood processor. | |
|---|---|---|

Lastly, the parties dispute whether "conveyor unit" and "conveying member" are means-plus-function terms under 35 U.S.C. §112 ¶6.

A patent claim may be expressed using functional language. *See* 35 U.S.C. § 112, ¶ 6; *Williamson v. Citrix Online*, LLC, 792 F.3d 1339, 1347 (Fed. Cir. 2015). When applicable, § 112, ¶ 6 limits the scope of the functional term "to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Id*.

Section 112, Paragraph 6, provides that a structure may be claimed as a "means. . .for performing a specified function" and that an act may be claimed as a "step for performing a specified function." 35 U.S.C. § 112, ¶ 6; *Masco Corp. v. United States*, 303 F.3d 1316, 1326 (Fed. Cir. 2002). There is a rebuttable presumption that § 112, ¶ 6 applies when the claim language includes "means" or "step for" terms. *Williamson*, 792 F.3d at 1348; *Masco Corp*, 303 F.3d at 1326. By contrast, a claim limitation that does not use the phrase "means for" or "step for" will trigger the rebuttable presumption that § 112, ¶ 6 does not apply. *Personalized Media Commc'ns, LLC v. ITC*, 161 F.3d 696, 703–04

(Fed. Cir. 1998).  This is a strong presumption that is not easily overcome.  *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004).

However, the strong presumption may be rebutted if the claim limitation is shown to use a non-structural term that is "a nonce word or a verbal construct that is not recognized as the name of structure" but is merely a substitute for the term "means for" or otherwise associated with functional language.  *Lighting World*, 382 F.3d at 1360. 1998).  The presumption is also rebutted when "the claim term fails to 'recite[] sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'"  *Williamson*, 792 F.3d at 1349 (quoting *Watts v. XL Systems, Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)).  The standard for determining if a term sufficiently defines structure "is whether the words of the claim are understood by [a person] of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* at 1349; *see also Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996).

Classified and Halverson agree that the claim language does not use "means" or "step for" language and there is a strong presumption against applying § 112, ¶ 6.  To rebut the presumption, Classified argues that "unit" and "member" are nonce words tantamount to using "means" because "conveying" does not modify either "unit" or "member" and the terms are functional replacements for the "means" or "steps for" of conveying.  In opposition, Halverson argues that claims 1 and 13 provide for that the

conveyor unit and member are attached to the support structure and that both terms recite definite structure considering the claim language.

The Court agrees with Halverson that the terms recite sufficiently definite structure.  Although recitations to physical structure are not required to avoid application of § 112, ¶6, they are generally sufficient to do so.  *CCS Fitness,* 288 F.3d at 1370.

Moreover, the Court may consider relevant dependent claims to determine if "they 'add limitations that either describe particular structural features or flesh out whether the term has a particular structural meaning.'"  *Tek Global, S.R.L., Tek Corp. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 786 (Fed. Cir. 2019) (quoting *Diebold Nixdorf, Inc. v. ITC,* 899 F.3d 1291, 1298 (Fed. Cir. 2018)).  Here, dependent claim 2 provides that "said conveyor unit include[s] a trough, wherein said conveying member travels along said trough" while dependent claims 11 and 15 correlate the conveying member's movement with that of the ram.

Halverson also argues that the specification describes both the "conveyor unit" and the "conveyor member" having physical structure: "[t]he conveyor unit 30 includes a trough 31 and a conveying member 32 circumscribing a longitudinal length of the trough 31 and extending from the first end 38 to the second end 39 as illustrated in FIGS. 2 through 7[,]" and "…the conveying member 32 is preferably comprised of a toothed chain as illustrated in FIG. 1."  (DuFault Decl., Ex. 13 at 4:67–5:15.)

-16-

On balance, the Court finds that neither of the terms are means-plus-function claims and next considers the terms' proposed constructions.

Turning to the parties' proposed constructions, the Court finds that a construction of the two terms is not needed. While the Court has previously rejected adopting a plain and ordinary meaning construction because such a construction would not resolve the parties' dispute, *O2 Micro Intern.,* 521 F.3d at 1361, the Court is persuaded that a person of ordinary skill in the art would understand that the terms "convey," "conveyor," and "conveying" all relate to transferring or transporting an object—in this case a log—and that there are only so many reasonable meanings for a "conveying unit" and a "conveyor member" in the context of a wood processing attachment. Consequently, the Court will adopt the plain and ordinary meaning of the terms "conveyor unit" and "conveyor member."

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **ADOPTS** the constructions of the claim terms and phrases within the '618 patent as set forth in this Order. Because the constructions set forth in this Order affect the parties' arguments supporting and opposing Defendant's Second Motion for Summary Judgment, the Court will also **DENY** the Second Motion for Summary Judgment as moot. Defendant may therefore file a summary judgment motion within thirty (30) days of this Order.

DATED: September 26, 2022
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge